Borough of Moosic, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent. Pennsylvania Gas & Water Company et al., Intervenors.

Mary Allen, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent. Pennsylvania Gas & Water Company et al., Intervenors.

Argued April 7, 1981, before President Judge CRUMLISH and Judges MENCER, ROGERS, CRAIG and PALLADINO. Judges BLATT and WILLIAMS, JR. did not participate.

*Joseph L. Vender*, for petitioner, Borough of Moosic.

*Joseph A. Lakowski,* for petitioner, Mary Allen.

*George H. Buchanan,* Assistant Counsel, with him *Shirley Rae Don,* Deputy Chief Counsel, and *Joseph J. Malatesta, Jr.,* Chief Counsel, for respondent, Pennsylvania Public Utility Commission.

*Charles E. Thomas,* with him *Jack F. Aschinger,* and *Patricia Armstrong,* of *Thomas & Thomas,* for intervenor, Pennsylvania Gas and Water Company.

*Ernest D. Preate, Sr.,* with him *Robert A. Preate* and *J. P. McGowan,* of *Levy, Preate & Purcell,* for intervenor, Scranton Lackawanna Industrial Building Company.

*James J. Ligi,* for intervenor, County of Lackawanna.

OPINION BY JUDGE CRAIG, May 29, 1981:

In these consolidated cases, the protestants have appealed an order of the Public Utility Commission (commission) which affirmed a decision of an administrative law judge (ALJ) approving an application of Pennsylvania Gas & Water Company (PG&W) to transfer 456.56 acres of its property, located in the watershed area of PG&W's Stark and No. 5 Reservoirs, to the Scranton Lackawanna Industrial Building Company (SLIBCO). The property at issue lies partly within the City of Scranton and partly within the Borough of Moosic (borough).

On January 31, 1979 PG&W, a public utility which supplies and distributes water and natural gas in northeastern Pennsylvania, and SLIBCO, the industrial arm of the Greater Scranton Chamber of Commerce, agreed that PG&W sell the subject property to SLIBCO or to SLIBCO's nominee, Lackawanna

County. At the time of making the agreement, PG&W knew that Lackawanna County intended to construct ski slopes on a portion of the property as part of a proposed recreational development known as the Montage Project.

On March 2, 1979, PG&W applied to the commission for approval of the transfer pursuant to Section 1102 of the Public Utility Code (Code), 66 Pa. C. S. §1102, relating to certificates of public convenience and Section 507 of the Code, 66 Pa. C. S. §507, relating to contracts between public utilities and municipalities.

On June 12, 1979, the borough asked to intervene, but the ALJ denied the application on the basis that the borough's allegations as to the deleterious environmental and economic impact of the Montage Project were outside the statutory jurisdiction of the commission and irrelevant to the proceedings. After submitting an amended application to intervene, the ALJ permitted the borough to intervene as a customer and consumer of services provided by PG&W. The commission affirmed the ALJ's approval of the sale.

The protestants contend that the refusal to allow the borough to raise the environmental considerations violated Article I, Section 27 of the Pennsylvania Constitution, which this court has held to be self-executing. *See Commonwealth v. National Gettysburg Tower, Inc.,* 8 Pa. Commonwealth Ct. 231, 302 A.2d 886 (1973). Section 27 states as follows:

§27. Natural resources and the public estate.

The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trus-

342

tee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

The protestants contend that once the possibility of an adverse environmental impact is raised, Section 27 obligates the commission to conduct a full investigation into what would be the environmental effect of construction of the Montage Project.

However, in *Payne v. Kassab,* 11 Pa. Commonwealth Ct. 14, 312 A.2d 86 (1973), this court held that, although Section 27 is self-executing, its terms are not absolute and that, in reviewing cases raising the environmental issue, a threefold test applies: (1) Was there compliance with all applicable statutes and regulations relevant to the protection of the Commonwealth's environment? (2) Does the record demonstrate a reasonable effort to reduce the environmental incursion to a minimum? (3) Does the environmental harm which will result from the challenged decision or action so clearly outweigh the benefits to be derived therefrom that to proceed further would be an abuse of discretion?

Here application of the three-pronged test reveals that, unlike *Kassab,* where the court was required to determine the duties imposed upon the Department of Transportation by Section 27 in conjunction with those imposed by Section 13 of the Act of May 6, 1970, P.L. 356 (Act 120), *as amended,* 71 P.S. §512, the protestants have not referred us to any statutes or regulations pertinent to this case, other than the Public Utility Code itself. Moreover, the actual subject of the present case is a proposed transfer of property, which transfer itself is devoid of any environmental impact.

The issue here is: Before the commission may permit a public utility to transfer property to a grantee outside the commission's administrative control, does

Section 27 impose upon the commission a duty to inquire into the environmental impact of the grantee's proposed use of the land?

In resolving this issue, we are guided by our holding in *Community College of Delaware County v. Fox,* 20 Pa. Commonwealth Ct. 335, 358, 342 A.2d 468, 482 (1975), where Judge BLATT, discussing the operation of Section 27, stated that "while Section 27 may impose an obligation upon the Commonwealth to consider the propriety of preserving land as open space, it cannot legally operate to expand the powers of a statutory agency, nor can it expand the statutory powers of the DER as a practical matter here."

We view Section 27 to be self-executing only as it applies to the commission's regulation of a utility's *own* conduct which is within the ambit of the regulatory jurisdiction of the commission as created by statute and directly affects the environment. Sections 501 and 1501 of the Code, 66 Pa. C. S. §§501 and 1501, read together, vest in the Commonwealth the power to issue orders and regulations to assure that each public utility provides services and maintains facilities necessary or proper for the safety and convenience of the public.

The action which the protestants contend would be harmful to the environment, construction of the Montage Project on the property in issue, is not to be the action of PG&W or any other entity within the administrative authority of the commission. The protestants seek to interpose Section 27 for the purpose of empowering the commission to exercise land use control over a prospective owner outside of the commission's reach. However, *Community College of Delaware County v. Fox, supra,* precludes us from permitting Section 27 thus to expand the powers of the commission. Of course, any construction in the Montage Project must comply with the laws and regu-

lations administered by the Department of Environmental Resources as to erosion and sedimentation control.

Consequently, we hold that the commission did not abuse its discretion by correctly denying the borough's request to intervene for the purpose of showing environmental harm to be caused by the construction of the Montage Project.

. The protestants next contend that the commission erred by finding that the transfer of the watershed property surrounding PG&W's Stark and No. 5 Reservoirs would not adversely affect PG&W's ability to continue providing safe, efficient and reasonable water service to the public at reasonable rates.

Our scope of review on this issue is to determine whether the commission's findings were supported by substantial evidence. *West Penn Power Co. v. Pennsylvania Public Utility Commission*, 57 Pa. Commonwealth Ct. 148, 422 A.2d 230 (1980). We find that there exists on the record substantial evidence to support the commission's conclusion.

Before the commission, PG&W's chief water engineer testified that Stark has not been a potable water source since 1962 and No. 5 has not supplied potable water since 1977. Moreover, there was evidence that there has been a decrease in the number of consumer units serviced by PG&W and that PG&W did not foresee any increased demand on PG&W's supplies. If that testimony is believed, as it was by the commission, it provides definite support for the conclusion that the property to be transferred is not necessary to PG&W's continuing ability to provide adequate water service.

Finally, we are unable to agree with the protestants' contention that the commission was duty bound to delve into the motivation of PG&W's 1977 gift of $151,250 to Lackawanna Industrial Fund Enterprises,

the financial arm of SLIBCO. PG&W's disposition of its profits is a management prerogative and outside of the commission's regulatory authority so long as it does not affect the rate structure of the utility. The commission explicitly stated that it would be sure to protect the consumers on that point at the next rate case of PG&W.

Accordingly, we affirm the commission's decision.

### ORDER

AND Now, May 29, 1981, the order of the Public Utility Commission is hereby affirmed.

Judge MENCER did not participate in the decision in this case.