**The UNITED TELEPHONE COMPANY OF PENNSYLVANIA, Petitioner,**

**v.**

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 1995.

Decided May 20, 1996.

H. Kay Dailey, for Petitioner.

Kevin J. Moody, Assistant Counsel, for Respondent.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

FRIEDMAN, Judge.

The United Telephone Company of Pennsylvania (United) appeals from a final order of the Pennsylvania Public Utility Commission (PUC) directing United to allow staff in the PUC's Bureau of Consumer Service (BCS)[1] to monitor United's customer service

1. The BCS is charged with investigating and preparing replies to informal consumer complaints and advising the PUC as to the need for formal PUC action on matters brought to its attention by the complaints. Section 308(d) of the Public Utility Code, 66 Pa.C.S. § 308(d).

and collection representatives during telephone conversations with United's customers, without requiring authorization from United employees, but with express customer authorization.

■ The controversy in this case centers on the PUC's authority to order such monitoring in light of section 5703 of the Pennsylvania Wiretapping and Electronic Surveillance Control Act (Wiretap Act), 18 Pa.C.S. § 5703. The principal focus and purpose of the Wiretap Act is the protection of privacy and, to this end, section 5703 of the Wiretap Act generally prohibits any interceptions [2] of wire, electronic or oral communications as follows:

> Except as otherwise provided in this chapter, a person is guilty of a felony of the third degree if he:
>
> (1) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or oral communication;
>
> (2) intentionally discloses or endeavors to disclose to any other person the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know that the information was obtained through the interception of a wire, electronic or oral communication; or
>
> (3) intentionally uses or endeavors to use the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know, that the information was obtained through the interception of a wire, electronic or oral communication.

18 Pa.C.S. § 5703.

However, the Wiretap Act provides exceptions to this broad prohibition of interception and disclosure of communications, two of which are relevant here. Section 5704 of the Wiretap Act states in relevant part:

It shall not be unlawful under this chapter for:

> (1) An operator of a switchboard, or an officer, agent or employee of a provider of wire or electronic communications service, whose facilities are used in the transmission of a wire communication, to intercept, disclose or use that communication in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his service or to the protection of the rights or property of the provider of wire or electronic communications service. *However, no provider of wire or electronic communication service shall utilize service observing or random monitoring except for mechanical or service quality control checks.*
>
> . . . .
>
> (4) A person, to intercept a wire, electronic or oral communication, where *all* parties to the communication have given prior consent to such interception.

18 Pa.C.S. §§ 5704(1) and 5704(4) (emphasis added).

On August 1, 1994, counsel for the PUC informed United that staff from BCS wished to monitor United's customer service and collection employees during telephone contacts with United's customers. United expressed concern that such monitoring would violate the Wiretap Act because, under section 5704(1) of the statute, 18 Pa.C.S. § 5704(1), only United, as a provider of wire communication service, was authorized to monitor telephone conversations between its employees and customers. United agreed to allow BCS staff to conduct the monitoring on August 11, 1994, conditioning its consent upon BCS staff's compliance with the Wiretap Act. United provided BCS with a list of United service representatives, from which BCS selected twenty-eight to be monitored.[3]

---

**2.** The Wiretap Act defines "intercept" as "[a]ural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device." Section 5702 of the Wiretap Act, 18 Pa. C.S. § 5702. The parties do not dispute that BCS's attempt to monitor United's calls from customers is an "intercept" as defined in the statute, in that the BCS staff would aurally ac-

quire the contents of the telephone call between United's employees and United's customers.

**3.** BCS staff originally intended to conduct random monitoring; however, in response to United's concerns about this method, the BCS staff agreed to select and listen to one-third of United's representatives. (R.R., Appendix F at 4a.)

United's legal concerns remained unresolved, however. Therefore, when BCS personnel appeared at United on August 11, 1994, counsel for United explained that, in order to assure compliance with the Wiretap Act, BCS staff could only listen in on the conversations of United employees who agreed to the monitoring. To that end, United already had sought permission from those service representatives targeted for monitoring by BCS, twenty-one of whom consented.[4] (R.R., Appendix F at 12a–13a.) United also indicated that it had prepared a statement which would establish prior consent from the customers to be monitored, and had distributed the statement to the consenting service representatives to use at the beginning of each telephone call to obtain customer consent.[5] (R.R., Appendix F at 12a–13a.) In this way, United hoped to alleviate its legal concerns because the monitoring would fall within the exception to the Wiretap Act set forth at 18 Pa.C.S. § 5704(4), which allows for the interception of communications where all parties to the communication have provided prior consent. However, the BCS staff refused to proceed with any of the monitoring under the conditions imposed by United and left the premises.

At a public meeting on December 1, 1994, the PUC adopted a tentative order in which, pursuant to its authority under sections 504, 505, 506 and 3301 of the Public Utility Code (Code), 66 Pa.C.S. §§ 504, 505, 506 and 3301, the PUC directed United to allow BCS staff to "conduct observations of customer service and collection representatives without requiring authorization from United employees, but with express customer authorization." (R.R., Appendix F at 7a.) United filed a timely response to the tentative order requesting that the PUC reconsider its position because, in light of the strict prohibitions in the Wiretap Act, the service monitoring could not legally be performed as directed.[6] (R.R., Appendix F at 9a–28a.) On April 5, 1995, the

---

4. Actually, only twenty of those agreeing to be monitored came from the original list of twenty-eight selected by BCS; the twenty-first employee, although not among those originally chosen, had volunteered to be monitored. (R.R., Appendix F at 13a.) On August 10, 1994, anticipating the visit from BCS staff, United sent BCS a form entitled "Release and Indemnification," which required the PUC to recognize that the monitoring could be construed to violate the Wiretap Act and to indemnify United against any suits or alleged violations of the Wiretap Act arising from the BCS monitoring. BCS did not sign the document, and United did not require BCS to sign the "Release and Indemnification," as long as BCS monitored only those United employees that had given their consent. (R.R., Appendix F at 4a.)

5. United and BCS staff agreed beforehand that United employees would inform customers about the monitoring and seek customer permission to allow BCS staff to listen to the conversation. (R.R., Appendix F at 3a.)

6. In its response, United also offered additional facts and raised constitutional concerns connected with the PUC's interpretation of the Wiretap Act. Although the PUC accepted United's affidavit "to the extent that it supports the facts necessary to resolve this dispute," (R.R., Appendix A, PUC Order at 7), the PUC dismissed the additional facts included in United's response as not germane to the precise legal question at issue; that is, whether BCS staff could monitor United's service representatives without their prior consent. We agree with the PUC that the parties do not dispute the facts underlying the controversy here and that the additional facts presented by United are unnecessary to resolve the legal question before us.

For example, United alleges as fact that through its proposed service monitoring, BCS merely was continuing an informal investigation initiated against United in August 1992. United asserts that it cooperated fully in that proceeding, which remains unresolved. United also maintains that it consistently made BCS aware of its concerns regarding violation of the Wiretap Act and worked to accommodate the PUC by using appropriate exceptions to the Wiretap Act, so that United could abide by the Wiretap Act's prohibitions while, at the same time, cooperating with BCS' inquiry. Whether true or false, however, these allegations do not impact on the dispute here.

United also raised constitutional due process and equal protection issues in its response. With regard to due process, United claimed that it was denied a proper hearing and that the PUC commingled its adjudicatory and prosecutory functions in issuing its tentative order. As to equal protection, United asserted that BCS monitored telephone companies similarly situated to United and willingly monitored only those employees who provided prior consent, yet BCS has denied United the same treatment.

The PUC determined that United's allegations of constitutional violations were without merit. However, because we are able to decide this case on non-constitutional grounds, we will not reach the constitutional issues raised by United. *Ballou v. State Ethics Commission*, 496 Pa. 127, 436 A.2d 186 (1981).

PUC adopted its tentative order as final,[7] and United now petitions for review of that final order.

■ On appeal,[8] United argues that the PUC erred in rendering its decision because: (1) the PUC lacks jurisdiction to interpret or adjudicate matters concerning the Wiretap Act; and (2) the PUC cannot direct United to allow the BCS staff to intercept telephone conversations between United's employees and customers, in direct violation of strict prohibitions in the Wiretap Act, when neither the PUC nor its BCS staff meet any of the statute's exceptions to these prohibitions. On the other hand, the PUC maintains that its broad powers and duties set forth in provisions of the Code provide the PUC with both the jurisdiction to order, and the authority to conduct, the monitoring at issue here. We agree with United.

## I.

Here, the PUC's final order clearly authorizes a wiretap and determines the legality of an instance of electronic surveillance. However, in *McClellan v. Pennsylvania Public Utility Commission*, 159 Pa.Cmwlth. 675, 634 A.2d 686, 688–89 (1993) (emphasis added), we held that the courts have exclusive power to adjudicate such matters, stating:

> The PUC does not have jurisdiction to authorize wiretaps, to hear criminal prosecutions involving illegal wiretaps or to provide civil remedies for victims of illegal wiretaps. *This lack of jurisdiction is predicated on the PUC's lack of authority to determine the legality of an instance of electronic surveillance.* ... The PUC has no expertise whatsoever in deciding the legality of wiretapping or otherwise administering the [Wiretap] Act. These areas are clearly within the domain of the courts.

In its order, the PUC acknowledges that it is without jurisdiction to adjudicate wiretap issues or administer the Wiretap Act and agrees with *McClellan*'s holding that the PUC cannot authorize wiretaps or determine

wiretap legality. (R.R., Appendix A, PUC Order at 9–10.) Nevertheless, the PUC claims jurisdiction here based on its authority to carry out provisions of the Code, particularly the obligation to insure that utilities provide reasonable and adequate service in conformity with the PUC's regulations. Section 1501 of the Code, 66 Pa.C.S. § 1501. According to the PUC, it is not involved in the authorization or legality of a wiretap, but is merely performing its duty to determine whether its enforcement of Code section 1501, as exercised through the monitoring of United's service representatives, violates the Wiretap Act. The distinction that the PUC attempts to draw is lost on us.

The PUC supports its position by citing *Barasch v. Pennsylvania Public Utility Commission*, 133 Pa.Cmwlth. 285, 576 A.2d 79 (1990) (*Barasch I*), and *Barasch v. Bell Telephone Co. of Pennsylvania and Pennsylvania Public Utility Commission*, 529 Pa. 523, 605 A.2d 1198 (1992) (*Barasch II*), asserting that, in these cases, the courts already recognized the PUC's right to determine whether a public utility's proposed service would violate the Wiretap Act and, thus, be unjust and unreasonable under the Code. Based on this prior recognition of its jurisdiction, the PUC reasons that, in *McClellan*, we could not have intended to prohibit the PUC from determining whether enforcement of certain Code provisions would violate the Wiretap Act. We believe that the PUC's reliance on *Barasch I* and *Barasch II* for this position is misplaced.

Contrary to the PUC's assertion, neither *Barasch I* nor *Barasch II* specifically recognized the PUC's jurisdiction to interpret or adjudicate matters connected with the Wiretap Act. However, the PUC contends that, because the courts in both cases had the opportunity, but failed, to fault the PUC for determining whether a public utility's offered service violated the Wiretap Act based on a lack of jurisdiction,[9] the PUC may "assume" that the courts recognized the PUC's authority to address the issue. (R.R., Appendix A,

---

7. Three PUC Commissioners voted to adopt the order as final; however, two members of the PUC, Chairman John M. Quain and Vice-Chairman Joseph Rhodes, Jr., dissented in that order. (R.R., Appendix A at 1.)

8. Our scope of review of a decision of the PUC is limited to determining whether constitutional rights were violated, whether the PUC committed

errors of law, or whether the PUC's findings of fact are supported by substantial evidence. *McClellan v. Public Utility Commission*, 159 Pa. Cmwlth. 675, 634 A.2d 686 (1993).

9. *Barasch I* and *Barasch II* both dealt with a proposed customer service introduced by Bell of Pennsylvania (Bell), known as Caller * ID, which would permit Bell's customers to identify the

PUC Order at 10–11.) We acknowledge that the courts did not challenge the PUC's jurisdiction in either *Barasch I* or *Barasch II;* however, we also note that, unlike *McClellan,* neither case directly addressed the question of jurisdiction. Given the clear prohibition in *McClellan,* we believe that the PUC's "assumption" here is unwarranted and, based on *McClellan,* we conclude that the PUC lacked jurisdiction to interpret the Wiretap Act and determine the legality of an instance of electronic surveillance, such as it did here.

## II.

■ The issue of jurisdiction aside, United also argues that the method of monitoring directed by the PUC violates the Wiretap Act; that is, the PUC cannot direct its BCS staff to monitor telephone conversations between United's service representatives and customers without obtaining the consent of all parties to the conversations. 18 Pa.C.S. § 5704(4). However, the PUC maintains that neither United nor its employees can rely on the Wiretap Act to provide a legal right to refuse to allow BCS staff to monitor calls between United's employees and customers.

In taking this position, the PUC admits that the Code contains no provision dealing

with the wiretapping of telephone lines because that matter is addressed exclusively by Chapter 57 of the Pennsylvania Crimes Code, 18 Pa.C.S. §§ 5701–5781. Nevertheless, the PUC attempts to link its statutory authority under the Code to regulate public utilities, in conjunction with United's corresponding obligations as a regulated public utility, to United's statutory authority under the Wiretap Act, (*see* R.R., Appendix A, PUC Order at 8–9, 10–13, 16), utilizing the following reasoning.

First, the PUC maintains that its responsibilities under section 501(b) of the Code, 66 Pa.C.S. § 501(b), require that it supervise and regulate all public utilities doing business within the Commonwealth; in order to fulfill this duty, the PUC contends that sections 501(a) and 1501 of the Code, 66 Pa.C.S. §§ 501(a) and 1501,[10] together provide the PUC with broad power to issue orders and regulations to assure that each public utility provides service and maintains facilities necessary or proper for the safety and convenience of the public. *Borough of Moosic v. Pennsylvania Public Utility Commission,* 59 Pa.Cmwlth. 338, 429 A.2d 1237 (1981). To this end, sections 504, 505 and 506 of the Code, 66 Pa.C.S. §§ 504, 505 and 506,[11] grant

caller's telephone number for calls made to the customer; however, the number was transmitted without the caller's approval. An administrative law judge (ALJ) determined that Caller * ID violated the Wiretap Act unless callers were provided the option to block the transmission of their telephone numbers, but the PUC rejected the ALJ's decision and approved the use of the service without this restriction. In *Barasch I,* we reversed the PUC order, concluding that the service violated "trap and trace" prohibitions contained in the Wiretap Act; our supreme court affirmed in *Barasch II.* Stressing that the Wiretap Act has consistently required that *all* parties consent to any form of interception, the court determined that Caller * ID violated the Wiretap Act because it did not provide for consent of the calling party.

10. Section 501(a) of the Code provides in pertinent part:

   (a) **Enforcement of provisions of part.**— In addition to any powers expressly enumerated in this part, the commission shall have full power and authority, and it shall be its duty to enforce, execute and carry out, by its regulations, orders, or otherwise, all and singular, the provisions of this part, and the full intent thereof; and shall have the power to rescind or

modify any such regulations or orders. The express enumeration of the powers of the commission in this part shall not exclude any power which the commission would otherwise have under any of the provisions of this part.

   Section 1501 of the Code provides:

   Every public utility shall furnish and maintain adequate, efficient, safe and reasonable service and facilities, and shall make all repairs, changes, alterations, substitutions, extensions and improvements in or to such service or facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employees, and the public. Such service also shall be reasonably continuous and without unreasonable interruptions or delay. Such service and facilities shall be in conformity with the regulations and orders of the commission. Subject to the provisions of this part and the regulations or orders of the commission, every public utility may have reasonable rules and regulations governing the conditions under which it shall be required to render service.

11. These Code sections provide:

   The Commission may require any public utility to file periodical reports, at such times, and in

the PUC full authority to inspect or investigate any and all facilities and records of any public utility to ensure that the utility is providing safe, adequate and reasonable service in conformity with Code section 1501 and the regulations promulgated thereunder.[12] The PUC contends that in the exercise of its fact-gathering powers pursuant to Code sections 504, 505 and 506, it has absolute authority to monitor the telephone conversations of United employees to assure compliance with the Code and PUC regulations.

■ Next, the PUC points out that section 5704(1) of the Wiretap Act carves out an exception to the general prohibition of interception and disclosure of communications for providers of wire communication services, such as United, authorizing such providers to monitor for mechanical or service quality control checks without according rights to the utility's employees.[13] Finally, the PUC notes that the Code imposes an obligation on United and its employees to cooperate and participate in any PUC "inspection, examination, inquiry or investigation."[14] Sections

---

12. The PUC has promulgated regulations concerning the adequacy of services provided by regulated telephone companies at 52 Pa.Code §§ 63.131–63.137 and §§ 64.1–64.202.

13. The PUC claims that "United's customer service representatives are not accorded any rights under the Wiretap Act to assert against the telecommunications utility by which they are employed," and that "... the Wiretap Act was not intended to protect telecommunication utility employees ... from monitoring by the Public Utility Commission." (R.R., Appendix A, PUC Order at 8 and 12.) We disagree.

Clearly, United and its employees are persons under the statutory definition at section 5702 of the Wiretap Act, 18 Pa.C.S. § 5702, which defines a person as "[a]ny employee, or agent of the United States or any state or political subdivision thereof, and any individual, partnership, association, joint stock company, trust or corporation." An aggrieved person under this statute also is clearly defined to be "[a] person who was a party to any intercepted wire, electronic or oral communication or a person against whom the interception was directed." 18 Pa.C.S. § 5702. As persons under the Wiretap Act, United and its employees do, in fact, enjoy rights and protections under the statute. The Wiretap Act, at 18 Pa.C.S. § 5704(1), clearly provides that United's employees are entitled *not* to be monitored "except for mechanical or service quality control checks" and, even then, only by their employer, *not* the PUC. Thus, while United's employees may expect that their employer can monitor their conversations for the limited purposes stated in the Wiretap Act, they do not expect that third parties have the same right to monitor their telephone conversations.

14. Indeed, to the extent that United's employees would refuse to consent to the monitoring of their calls during customer contacts, the PUC contends that it is incumbent upon United to employ customer service representatives who will cooperate with monitoring of service calls. That is, the PUC does not feel that it must obtain the consent of United employees to monitor their service calls; rather, United should only employ

---

such form, and of such content, as the commission may prescribe, and special reports concerning any matter whatsoever about which the commission is authorized to inquire, or to keep itself informed, or which it is required to enforce. The commission may require any public utility to file with it a copy of any report filed by such public utility with any Federal department or regulatory body. All reports shall be under oath or affirmation when required by the commission.
66 Pa.C.S. § 504.

Every public utility shall furnish to the commission, from time to time, and as the commission may require, all accounts, inventories, appraisals, valuations, maps, profiles, reports of engineers, books, papers, records and other documents or memoranda, or copies of any and all of them, in aid of any inspection, examination, inquiry, investigation, or hearing, or in aid of any determination of the value of its property, or any portion thereof, and shall furnish any and all other information to the commission, as the commission may require, in any inspection, examination, inquiry, investigation, hearing, or determination of such value of its property, or any portion thereof.
66  Pa.C.S. § 505.

The commission shall have full power and authority, either by or through its members, or duly authorized representatives, whenever it shall deem it necessary or proper in carrying out any of the provisions of, or its duties under this part, to enter upon the premises, buildings, machinery, system, plant, and equipment, and make any inspection, valuation, physical examination, inquiry, or investigation of any and all plant and equipment, facilities, property, and pertinent records, books, records, accounts, maps, inventories, appraisals, valuations, memoranda, documents, or effects whatsoever, of any public utility, or prepared or kept for it by others, and to hold any hearing for such purposes. In the performance of such duties, the commission may have access to, and use any books, records, or documents in the possession of, any department, board, or commission of the Commonwealth, or any political subdivision thereof.
66 Pa.C.S. § 506.

501(c) and 505 of the Code, 66 Pa.C.S. §§ 501(c) and 505. Thus, the PUC asserts that because a public utility is bound to respond to PUC requests for information necessary to the performance of the PUC's regulatory oversight duties under the Code, the PUC can exercise United's monitoring rights under its exception to the Wiretap Act.[15] In essence, the PUC interprets its own regulatory authority under the Code to create a derivative exception to the Wiretap Act that is not provided for in either statute. We cannot accept this analysis.

■ As a regulatory agency, the PUC has only those powers, duties, responsibilities and jurisdiction given to it by the Legislature. *Western Pennsylvania Water Co. v. Pennsylvania Public Utility Commission*, 10 Pa.Cmwlth. 533, 311 A.2d 370 (1973). Indeed, our supreme court has held that, as a legislative creation, the PUC may exercise only those powers found in the expressed words of the enabling statute or those explicitly found in other legislative enactments. *Fairview Water Co. v. Pennsylvania Public*

*Utility Commission*, 509 Pa. 384, 502 A.2d 162 (1985). Although section 501 of the Code grants extensive general power to the PUC, this broad power must be read in light of the enumerated powers set forth in the Code and in conjunction with the purpose of the PUC to regulate and control public utilities in determining cost and service to the public. *Fairview.* The power of the PUC to intercept wire communications between a regulated telephone utility and that utility's customers is not among those enumerated in the Code. Further, the Wiretap Act specifically delineates the exceptions to its general prohibition on interception and disclosure of communications, and does not include an exception for the PUC. Accordingly, because neither the Code nor the Wiretap Act provide the PUC with the power to intercept telephone conversations, the PUC lacked authority to direct United to allow such monitoring in violation of the Wiretap Act.

■ Moreover, we note that, because the Wiretap Act is a criminal statute and wiretapping involves an invasion of the constitutional right of privacy, the Wiretap Act must be strictly applied and strictly construed. *Boettger v. Miklich*, 534 Pa. 581, 633 A.2d

---

service representatives who will agree to be observed. (R.R., Appendix A, PUC Order at 9.)

**15.** The PUC contends that the purpose of the monitoring here is as a "service quality control check" to assure that United's service representatives comply with PUC regulations and, as such, is the type of monitoring specifically permitted by section 5704(1) of the Wiretap Act. In making this argument, the PUC takes great pains to equate the term "service" under the Code with "service" as contemplated by section 5704(1) of the Wiretap Act. Pointing out that the PUC has promulgated regulations, at 52 Pa.Code § 63.137, which specifically address the "service monitoring" activities of regulated telephone companies such as United, and noting that these regulations are consistent with the activities United can perform under the Wiretap Act at section 5704(1), the PUC asserts that there can be no dispute that "service" in the Wiretap Act exception at section 5704(1) means the same thing as "service" under the Code. According to the PUC, because United's monitoring serves the same purpose as that of the PUC, United must use its power under section 5704(1) for that purpose.

On the other hand, United maintains that the meaning of "service" as intended in the Wiretap

Act is far narrower than that under the Code, contending that in the former case, the definition of "service" relates to the actual provision of the wire communication service, or transmission of telephone service—not the quality of service rendered by the telephone company's employees. Thus, even if the BCS staff could stand in United's shoes under this exception, it would be unable to use the results of the monitoring to evaluate United's employees.

We do not have to resolve this dispute, however. Here, the PUC maintains that its monitoring of United employees is included under the exception in the Wiretap Act which permits monitoring "by a provider of wire or electronic communication service ... [to monitor for] mechanical or service quality control checks." The obvious flaw in the PUC's argument is that the PUC is not an electronic or communications service provider. The exception in section 5704(1) of the Wiretap Act applies only to United, not to the PUC. Thus, even if, as the PUC claims, United's lawful "service observing" or "random monitoring" under section 5704(1) of the Wiretap Act is identical with the "service evaluation and monitoring" that United can perform under the PUC regulations, only United, not the PUC, is authorized to conduct such monitoring. Indeed, 52 Pa.Code § 63.131 specifically provides that nothing in this subchapter supersedes the Wiretap Act.

1146 (1993). We discussed this principle of strict construction in *Boettger v. Miklich,* 142 Pa.Cmwlth. 136, 599 A.2d 713, 717–18 (1991), *rev'd on other grounds,* 534 Pa. 581, 633 A.2d 1146 (1993), in which we stated:

As the Court stated in *Boettger v. Loverro (Loverro I),* 521 Pa. 366, 370–71, 555 A.2d 1234, 1236–37 (1989), *vacated and remanded on other grounds, Easton Publishing Co. v. Boettger,* 493 U.S. 885, 110 S.Ct. 225, 107 L.Ed.2d 178 (1989):

Pennsylvania's Wiretapping and Surveillance Control Act, is a pervasive scheme of legislation which suspends an individual's constitutional rights to privacy only for the limited purpose of permitting law enforcement officials, upon a showing of probable cause, to gather evidence necessary to bring about a criminal prosecution and conviction. The statute sets forth clearly and unambiguously by whom and under what circumstances these *otherwise illegal practices* and their derivative fruits may be used. (Emphasis added [in *Boettger* ].)

More recently, [citing *Commonwealth v. Hashem,* 526 Pa. 199, 206, 584 A.2d 1378, 1381–83 (1991),] the Court held:

[W]here an act is in derogation of this Commonwealth's constitutionally protected right to privacy [as is the Act] its provisions must be strictly applied.

. . . .

In the words of Article I, § 25 of the Constitution of Pennsylvania, 'except[ed] out of the general powers of government ... [to] forever remain inviolate,' is the right of the people to 'be secure in their persons, houses, papers and possessions from unreasonable searches and seizures ...' Article I, § 8. If the surveillance permitted by the Act is to meet the test of reasonableness, it is essential that, at a minimum, *all* [the] requirements directed by the Legislature be met. *No* violations of *any* provisions of the Act will be countenanced, nor will the failure of prosecutors to diligently follow the strict requirements of the Act be lightly overlooked. We must remain steadfast in this determination because there can be no greater infringement upon an individual's rights than by an indiscriminate and unchecked use of electronic devices. Where, in the wisdom of the legislature, such devices may be authorized, as in the present act, that use will be strictly adhered to and jealously enforced; for the alternative, no privacy at all, is unthinkable. (Emphasis in original.)

■ The PUC acknowledges that *Boettger* reflects the intent of the Wiretap Act; nevertheless, it contends that the Wiretap Act was never intended to usurp the provisions of the Code or to prevent or restrict the PUC from fulfilling its statutory duty under the Code by monitoring customer contacts with telecommunications companies. We find no merit in the PUC's suggestion that, as a regulator or government agency, it is exempt from the prohibitions of the Wiretap Act. On the contrary, the protections of the statute apply to, and regulate the conduct of, all persons, whether acting in a governmental, private or other capacity. *Commonwealth v. Baldwin,* 282 Pa. Superior Ct. 82, 422 A.2d 838 (1980).

■ As we stated previously, the Wiretap Act contains broad prohibitions against interception, disclosure or use of electronic, wire or oral communications, carrying with them sanctions of a felony of the third degree in addition to civil penalties. *See* sections 5703 and 5725 of the Wiretap Act, 18 Pa.C.S. §§ 5703, 5725. In light of both the clear and unambiguous statutory language of the Wiretap Act and the strict manner in which we must construe that statute, any exceptions to this broad prohibition must be very narrowly drawn. Because the BCS staff's request to monitor the conversations of United's employees simply does not fall within the exception provided to United in section 5704(1) of the Wiretap Act, that monitoring can be accommodated only by adhering to the consent exception, 18 Pa.C.S. § 5704(4), which applies only when *all* parties to the communication have given prior consent to such interception. As we stated in *Barasch I,* "enactment of the Wiretap Act, most recently amended October 21, 1988, was intended to develop a means for the prohibition of nonconsensual interception of wire, oral or electronic communication except where authorized by the statute." *Id.*

576 A.2d at 84, citing *Commonwealth v. Melilli*, 521 Pa. 405, 555 A.2d 1254 (1989). Similarly, our supreme court, in *Barasch II*, concluded that "[t]he two-party consent rule has been established in Pennsylvania as a means of protecting privacy rights, and principles of statutory construction require that the provisions of the Wiretap Act be interpreted in a manner which is consistent with those concerns." *Id.* at 533, 605 A.2d at 1203.[16]

■ Finally, the PUC maintains that, to the extent we would determine that the only exception available to the PUC under the Wiretap Act is 18 Pa.C.S. § 5704(4), which requires the consent of all parties, United's refusal to consent to the PUC's monitoring of United's lawful Wiretap Act "service observing" is unreasonable as a matter of law under sections 501, 1501 and 506 of the Code. We disagree.

First, because this is a private right, we do not believe that United can consent to monitoring on behalf of its employees; instead, United's consent was properly conditioned upon its employee's consent. The Court's conclusion in *Barasch II* that the consent exception of the Wiretap Act requires each of the "users" of a telephone service, that is, *each person* or entity which uses the communication service, to consent to the interception, applies with equal force to United and its employees. Because employees are persons distinct from their employer, interception of the employees' conversations requires their permission.

Moreover, we note that United has displayed every willingness to cooperate with the PUC by arranging for advance permission from most of the selected monitoring targets. By securing this consent, United attempted to comply with the BCS staff's request to monitor and, at the same time, adhere to the strict dictates of the Wiretap Act. United provided a suitable and nonintrusive way for the PUC to exercise its statutory authority under the Code, yet BCS refused to accept this sensible, legally compelled solution. Thus, it does not appear that United is being unreasonable here.

In adopting its reasoning, the PUC essentially claims that the prohibitions of the Wiretap Act must yield to the PUC's duty to carry out the Code provisions. We cannot discern any legislative intent to this effect. Rather, we find the language of 18 Pa.C.S. § 5704(1) to be quite clear and admit of no such exception as the PUC would have us construct here. The PUC cannot, under its statutory investigative powers, assert deriva-

---

**16.** The PUC also mistakenly claims that United employees have no right to refuse to allow the BCS staff to intercept the employees' calls with customers because the employees have no right of privacy in those conversations. The PUC claims that, although the customer must consent to the interception because his or her side of the conversation may involve personal matters, United's service representative is merely performing an impersonal job function which is subject to regulatory oversight and, therefore, cannot expect privacy. In making this claim, the PUC relies on *Commonwealth v. Christopher*, 423 Pa. Superior Ct. 51, 620 A.2d 494 (1992), *appeal denied*, 536 Pa. 638, 639 A.2d 23 (1994), in which the Pennsylvania Superior Court determined that the client of a county social worker did not violate the Wiretap Act when he recorded his meeting with the social worker because the social worker had no expectation of privacy with regard to the content of the recorded conversation. However, *Christopher* is easily distinguished from the present case because *Christopher* involved an "oral communication" under the Wiretap Act. "Oral communication" is defined in section 5702 of the Wiretap Act as

[a]ny oral communication uttered by a person *possessing an expectation that such communication is not subject to interception* under circumstances justifying such interception.

18 Pa.C.S. § 5702 (emphasis added). Here, however, the communication is a "wire communication" not an "oral communication." The statute defines a "wire communication" as

[a]ny aural transfer made in whole or in part through the use of facilities for the transmission of communication by wire, cable or other like connection between the point of origin and the point of reception, including the use of such a connection in a switching station, furnished or operated by a telephone, telegraph or radio company for hire as a communication common carrier.

18 Pa.C.S. § 5702. It is plain from these definitions that a "wire communication" contains no qualification to include the notion of an "expectation" of non-interception as exists in the definition of "oral communication;" therefore, the rationale of *Christopher* is inapplicable here.

tive authority to monitor conversations simply because United enjoys specific statutory authority to do so under the Wiretap Act. Other than as specifically provided for in the Wiretap Act, interception of wire, electronic or oral communications cannot take place without the prior consent of all parties to the communication. Accordingly, we reverse the order of the PUC.

## ORDER

AND NOW, this 20th day of May, 1996, the order of the Pennsylvania Utility Commission, dated April 5, 1995, is hereby reversed.

COLINS, President Judge, and DOYLE, J., dissent.

McGINLEY and SMITH, JJ., concur in the result only.

PELLEGRINI, Judge, concurring.

I concur with the majority that the Public Utility Commission's (PUC) proposed method of monitoring in this case is not within the exceptions to Section 5704 of the Pennsylvania Wiretap Act, 18 Pa.C.S. § 5704, but write separately because, unlike the majority, I believe that the PUC can consider whether the wiretap laws preclude it from exercising its statutory obligation to exercise oversight of a public utility. If the PUC cannot consider whether such statutory defenses are proper, at worst, there would be gridlock between the parties and, at best, parties would have to seek declaratory judgments in this court complicating the administrative process.

The PUC proposed to monitor phone calls between customers of United Telephone Company (United) and United's customer service representatives. United raised the Wiretap Act as a defense against PUC investigatory monitoring. The PUC held that the Wiretap Act did not preclude monitoring of the customer service and collection telephone calls reasoning that because United could monitor calls by its employees, the PUC

could, for the purpose of regulating United, stand in its shoes and monitor its employees. The majority opinion holds that the PUC has no jurisdiction to make a determination as to whether the Wiretap Act prohibits its proposed monitoring and, further, holds that the Wiretap Act precludes the proposed monitoring. While I don't disagree that the Wiretap Act precludes the proposed monitoring by the PUC, I would hold that the PUC may determine whether a defense to actions authorized by its enabling statute are precluded by other statutes such as the Wiretap Act.

For its position that the PUC has no jurisdiction, the majority relies on *McClellan v. Pennsylvania Public Utility Commission*, 159 Pa.Cmwlth. 675, 634 A.2d 686 (1993). However, *McClellan* does not control because, in that case, a customer of a public utility complained that the utility participated in illegal wiretaps. We agree with the PUC that it is not the proper tribunal to authorize wiretaps, to criminally prosecute violations of the Wiretap Act or to enforce the Act for the benefit of victims. *Id.* 634 A.2d at 688. But, unlike in *McClellan*, this case involves only proposed PUC regulatory action that is resisted by a public utility asserting possible Wiretap Act violations. The decision in *McClellan* does not restrict the PUC from addressing this issue.

This conclusion is supported by the decisions in *Barasch v. Pennsylvania Public Utility Commission*, 529 Pa. 523, 605 A.2d 1198 (1992), *affirming*, 133 Pa.Cmwlth. 285, 576 A.2d 79 (1990). Those opinions, although not addressing jurisdiction directly, approved the PUC's consideration of whether the Wiretap Act applies or affects the grant or denial of a public utility's request to provide a new type of service. To hold otherwise would be to allow the PUC to approve new services which directly violate the protections of the Wiretap Act without ever considering those protections. It is well to note that the PUC's ultimate determination as to these ancillary questions are subject to our full review.[1]

---

1. The courts give deference to an agency's interpretation of statutes when that agency is interpreting a statute that it is charged with enforcing or the administrative decision is one within its area of expertise. *Pennsylvania Electric Company v. Pennsylvania Public Utility Commission*, 166 Pa.Cmwlth. 413, 648 A.2d 63, 75 (1994),

petition for allowance of appeal denied, 542 Pa. 680, 668 A.2d 1141 (1995). Because the Wiretap Act is not a statute the PUC is charged with enforcing and it has no expertise in the area, its interpretation of the Wiretap Act would not be given deference by this court.

I also write separately because I disagree with the impression that United's employees must consent to the monitoring because they have some sort of privacy interest. Customer service representatives can have no expectation of privacy in calls made for their employer, and the only reason the PUC cannot monitor those calls is our restrictive Wiretap Act. Inherent in its "full powers in regulating services", *Fairview Water Company v. Pennsylvania Public Utility Commission*, 509 Pa. 384, 502 A.2d 162, 165–66 (1985), the PUC is neither precluded from ordering United to install separate microphones on the employee's equipment so that only their responses could be heard so as to move the monitoring outside the Wiretap Act,[2] nor from requiring United to make it a condition of employment that the employees consent to PUC monitoring of their side of the customer service conversations.

SMITH, J., joins in this concurring opinion.

---

**2.** Section 5702 of the Wiretap Act, 18 Pa.C.S. § 5702, defining "wire communication".