568 A.2d 726

**PENNSYLVANIA COALITION AGAINST DOMESTIC VIOLENCE and Mary Jane Isenberg, Petitioners,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

**David M. BARASCH, Consumer Advocate, Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

**Barry STEINHARDT et al., Petitioners,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

**CONSUMER EDUCATION AND PROTECTIVE ASSOCIATION et al., Petitioners,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Heard Dec. 18, 1989.

Decided Dec. 29, 1989.

420

David T. Kluz, Harrisburg, for petitioners, Pennsylvania Coalition Against Domestic Violence and Mary Jane Isenberg.

Daniel Clearfield, with him, Irwin A. Popowsky, Senior Asst. Consumer Advocates, Harrisburg, for petitioner, David M. Barasch, Consumer Advocate.

Scott Burris, Philadelphia, for petitioner, Barry Steinhardt, The American Civil Liberties Union of Pennsylvania.

Steven P. Hershey, Philadelphia, for petitioners, Consumer Education And Protective Association and Carol Walton.

John Povilaitis, Chief Counsel, with him, Bohdan R. Pankiw, Deputy Chief Counsel, and John A. Levin, Asst. Counsel, for respondent.

Irving R. Segal, with him, Gerard J. St. John, Schnader, Harrison, Segal & Lewis, Philadelphia, and D. Michael Stroud, James G. Pachulski, Washington, D.C., Julia A. Conover, and Daniel E. Monagle, Philadelphia, for intervenor, The Bell Telephone Company of Pennsylvania.

## OPINION

CRUMLISH, Jr., President Judge.

The Pennsylvania Coalition Against Domestic Violence and Mary Jane Isenberg (Coalition) and David M. Barasch, Consumer Advocate (Barasch), have filed a joint application for a partial stay pending appeal seeking, in the alternative, (1) an injunction pending appeal prohibiting the intervenor Bell Telephone Company of Pennsylvania (Bell) from offering Caller ID service to the general public unless a blocking option is also offered, or (2) a partial stay pending appeal limiting Caller ID service to emergency service providers. Similar applications were filed by Barry Steinhardt, the American Civil Liberties Union of Pennsylvania (ACLU), and the Consumer Education and Protective Association and Carol Walton (CEPA); a hearing on all three applications [1] was conducted on Monday, December 18, 1989.[2] These applications for a partial stay are granted.

In the underlying proceeding, the Commission rejected the recommendation of Administrative Law Judge Michael Schnierle and entered an order directing Bell to offer Caller ID service to the general public. Caller ID allows a subscriber to identify the telephone number from which a call

1. By Order dated December 15, 1989, respondent Public Utility Commission's (Commission) motion to quash these applications was denied.
2. The Coalition, Barasch, the ACLU and CEPA will be referred to collectively as applicants.

is being made, including private and non-listed numbers, through the use of a device which displays that number and then stores it in memory for future retrieval. The order further directed that Bell only be required to provide "blocking" protection to domestic violence intervention and law enforcement agencies and individuals certified as being subject to the risk of personal injury. "Blocking" enables a caller to prevent his or her phone number from being identified by a Caller ID device.

The applicants contend that they have established the prerequisites for the granting of their requested relief under *Pennsylvania Public Utility Commission v. Process Gas Consumers Group*, 502 Pa. 545, 467 A.2d 805 (1983). Under *Process Gas,* this Court may grant a stay if the applicants make a strong showing that they are likely to prevail on the merits; if they show they will suffer irreparable injury without the stay; and if the stay will not substantially harm other interested parties or adversely affect the public interest. Moreover, in announcing the *Process Gas* standard, the Pennsylvania Supreme Court specifically stated that when confronted with a case in which the latter three factors strongly favor interim relief a court may exercise its discretion to grant a stay if the applicant has made a substantial case on the merits. *Id.*

The applicants argue that they are likely to succeed on the merits because Bell's Caller ID violates Section 5771(a) of the Pennsylvania Wiretapping and Electronic Surveillance Control Act (Wiretap Act),[3] prohibiting use of a "trap and trace device." 18 Pa.C.S. § 5771(a). A "trap and trace device" is defined in the Wiretap Act as one which "captures the incoming electronic or other impulses which identify the originating number of an instrument or device from which a wire or electronic communication was transmitted." 18 Pa.C.S. § 5702. The question of whether Caller ID violates the Wiretap Act is a case of first impression in this Commonwealth.

3. 18 Pa.C.S. §§ 5701–5781.

██ Upon careful review of the Wiretap Act, this Chancellor concludes that applicants have made a substantial showing that Caller ID service falls within the Wiretap Act's definition of a "trap and trace device." Although Section 5771(b)(2) allows the use of a "trap and trace device" to record an "electronic communication"[4] so that private customers may be protected from abusers of the service, that exception specifically limits this privilege to a "provider of electronic or wire communication service."[5] Thus, Section 5771(b)(2) is applicable only to the telephone company itself and is not intended to include the company's private customers. Thus, applicants have satisfied the first *Process Gas* criterion.

██ Applicants next argue that absent a stay, irreparable harm will result to the individuals described in the Commission's order who are eligible for Caller ID blocking certification. This order granted total blocking privileges to federal, state, and local law enforcement organizations and nonprofit domestic violence intervention agencies. It also provides that law enforcement authorities may certify domestic abuse and violent crimes victims, witnesses and abuse agencies workers as eligible for this blocking device in their homes.

Although the Commission's safeguards disclose an underlying empathy for such individuals, they do not mitigate applicants' irreparable harm. The record is entirely devoid

---

**4.** The Wiretap Act defines "electronic communication" as "[a]ny transfer of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photo-optical system...." 18 Pa.C.S. § 5702.

**5.** That section reads in part:
    **(b) Exception.**—The prohibition of subsection (a) does not apply with respect to the use of a pen register or a trap and trace device by *a provider of electronic or wire communication service:*
    ....
    (2) to record the fact that a wire or electronic communication was initiated or completed in order to protect the provider ... or a user of the service from fraudulent, unlawful or abusive use of service, or with the consent of the user of the service.
    (Emphasis added.)

of evidence suggesting the most minimal guidelines, such as who might qualify for certification and how much time would be necessary to effect certification. Moreover, the Commission's order fails to set forth basic provisions of notice, hearing and appeal. Thus, individuals who are to be protected must rely on the unfettered discretion of law enforcement officials in order to obtain protections that the Commission acknowledges are necessary.[6] Until the provider can demonstrate that there is no other technological innovation which can better protect these privacy interests, we are required to guard against the possibility of harm inherent in the distribution of such devices to the general public.

■ Finally, the applicants contend that granting the stay will not substantially harm other interested parties or the public interest. This Chancellor agrees. If the applicants' requested partial stay is granted, Bell may nevertheless begin distribution of Caller ID to emergency service providers and law enforcement agencies. This option will preserve the life-saving benefits of Caller ID. Of course, vindication of the important privacy rights of this Commonwealth's citizens will be ultimately determined on appeal. In the interim, granting a stay will protect those privacy rights to the extent the legislature has sought to preserve them by enacting the Wiretap Act.

6. Applicants presented the affidavit of Barbara Hart, a representative of the Pennsylvania Coalition Against Domestic Violence, who testified that Caller ID would only help facilitate an abuser's obsession with maintaining control over his or her abused spouse. Ms. Hart stated that although approximately 800,000 individuals are subject to domestic abuse in Pennsylvania annually, less than ten percent choose or are able to obtain shelter with a domestic abuse agency. Rather, the majority of these individuals seek shelter at the house of family or friends. Moreover, this testimony also disclosed that women who receive advice or protection in a domestic abuse shelter are still at risk because Caller ID not only facilitates eventual identification of the shelter but also the spouse who is in communication with outside counseling. Also in the record is testimony that undercover law enforcement officials would be put in life-threatening situations if Caller ID were available to the public. A suspected criminal who subscribed to Caller ID would instantly know the telephone number and, through the use of a "reverse telephone directory," could discover the undercover agent's home or operation's address.

Withholding Caller ID from the general public will not alleviate those situations where a customer is being harassed by the anonymous "crank" telephone caller. However, this Chancellor finds persuasive the record evidence as discussed in Administrative Law Judge Schnierle's opinion that other Bell services currently available on a per-call basis—such as Call*Trace, Call*Block or Call*Return—used in conjunction with local Message Unit Detailed Billing, offer harassed customers essentially the same ability to remedy abusive calls. Thus, because the pervasive nature of the intrusion here—the dissemination of one's telephone number without his consent to the general public—is out of proportion to the marginal benefits Caller ID provides, this Chancellor finds that applicants' request presents no harm to the public interest.

Accordingly, applicants' request for a partial stay pending appeal limiting Caller ID to emergency service providers is granted.

## ORDER

### (Nos. 2268, 2270, 2324 and 2371 C.D.1989)

Upon consideration of the petitioners' joint application for partial stay and respondent's answer thereto, it is ordered that said application is granted. The order of the Pennsylvania Public Utility Commission entered November 9, 1989, at R–891200 et al., is stayed insofar as it permits the Bell Telephone Company of Pennsylvania to provide Caller ID service to entities or individuals other than police departments, fire departments or county emergency dispatch centers. Such emergency service providers may subscribe to and utilize Caller ID service provided that their use complies with the provisions of 18 Pa.C.S. § 5704(3).