IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT
**BAER, C.J., TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 27 MAP 2021 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Superior Court dated August 11, |
| | : | 2020, reconsideration denied |
| v. | : | October 14, 2020, at No. 1428 MDA |
| | : | 2017 which Reversed/Vacated the |
| | : | Judgment of Sentence of the York |
| AKIM SHARIF JONES-WILLIAMS, | : | County Court of Common Pleas, |
| | : | Criminal Division, dated April 5, 2017 |
| Appellee | : | at No. CP-67-CR-0002824-2015 and |
| | : | Remanded for a new trial. |
| | : | |
| | : | ARGUED: December 8, 2021 |
| | : | RESUBMITTED: June 22, 2022 |

## OPINION

**JUSTICE MUNDY**                                    **DECIDED: July 20, 2022**

This appeal concerns the warrantless seizure of blood after it had already been drawn and preserved by hospital personnel. For the following reasons, we affirm the Superior Court's holding that the evidence at issue should have been suppressed and remand for a new trial.

### I. Factual Background and Procedural History

On July 5, 2014, at around 4:42 p.m., Akim Jones-Williams (Appellee) drove his car at approximately two miles per hour across train tracks. An approaching train collided with the car and pushed it nearly one-quarter mile before it stopped. Upon arriving at the scene, emergency personnel found Appellee outside the vehicle. Appellee's fiancé, Cori

Sisti, and their daughter, S.J., were still inside the car. Medics declared Sisti dead at the scene, but transported Appellee and S.J. to York Hospital for medical treatment.[1]

Lieutenant Steven Lutz was the officer in charge after the accident. Several individuals told Lieutenant Lutz that they smelled burnt marijuana coming from Appellee and the car. Therefore, at approximately 6:00 p.m., Lieutenant Lutz directed Sergeant Keith Farren to interview Appellee at the hospital and obtain a "legal blood draw." Sergeant Farren explained that a "legal blood draw" refers to seeking consent or reading an implied consent form to a suspect before seizing their blood for testing. However, when Sergeant Farren arrived at the hospital, Appellee was restrained in a hospital bed fading in and out of consciousness and unable to respond to basic questions. As such, Sergeant Farren could not communicate to Appellee the consent of the form. Nevertheless, Sergeant Farren later learned that hospital personnel drew Appellee's blood at 5:56 p.m. The record does not establish why that blood was drawn, but it is clear that it was drawn prior to Sergeant Farren's arrival.

At 7:30 p.m., Sergeant Farren completed paperwork requesting the hospital's lab to transfer Appellee's blood sample to the National Medical Services ("NMS") laboratory for testing to determine the presence of alcohol or controlled substances. Three days later, on July 8, 2014, the hospital laboratory transferred the blood sample to NMS, which was subsequently analyzed on July 15, 2014. The resulting toxicology report revealed that Appellee's blood contained Delta-9 THC, the active ingredient in marijuana.

Lieutenant Lutz arrested Appellee on April 2, 2015. Following a preliminary hearing, Appellee was held for trial on charges of homicide by vehicle while driving under the influence ("DUI"); homicide by vehicle; endangering the welfare of a child ("EWOC"); recklessly endangering another person ("REAP"); DUI: controlled substance – schedule

---

[1] S.J. survived the injuries sustained from the accident.

I; DUI: controlled substance – schedule I, II, or III metabolite; DUI: general impairment; careless driving; careless driving – unintentional death; aggravated assault while DUI; and aggravated assault by vehicle.[2]

On October 26, 2015, Appellee filed an omnibus pre-trial motion, in which he moved to suppress the blood test results. He argued that police lacked probable cause that he was driving under the influence, that his blood was seized without a warrant and without satisfying the exigency exception, and that 75 Pa.C.S. § 3755 did not justify the seizure in the absence of exigent circumstances.[3] A suppression hearing was held on December 21, 2015 at which Lieutenant Lutz explained that he believed the blood could be obtained through a "legal blood draw." However, different from Sergeant Farren's definition, Lieutenant Lutz testified that the legal blood draw theory was supported by Section 3755 rather than through obtaining consent:

> [Lieutenant Lutz]: I believe the vehicle code allows you to have a legal blood
> drawn [sic]. I believe it's underneath 3755. I'm not quite sure. But it allows

---

[2] Respectively, 75 Pa.C.S. § 3735(a); 75 Pa.C.S. § 3732; 18 Pa.C.S. § 4304(a)(1); 18 Pa.C.S. § 2705; 75 Pa.C.S. § 3802(d)(1)(i); 75 Pa.C.S. § 3802(d)(1)(iii); 75 Pa.C.S. § 3802(d)(2); 75 Pa.C.S. § 3714(a); 75 Pa.C.S. § 3714(b); 75 Pa.C.S. § 3735.1(a); and 75 Pa.C.S. 3732.1(a).

[3] Section 3755 reads:

§ 3755. Reports by emergency room personnel

**General rule.**--If, as a result of a motor vehicle accident, the person who drove, operated or was in actual physical control of the movement of any involved motor vehicle requires medical treatment in an emergency room of a hospital and if probable cause exists to believe a violation of section 3802 (relating to driving under influence of alcohol or controlled substance) was involved, the emergency room physician or his designee shall promptly take blood samples from those persons and transmit them within 24 hours for testing to the Department of Health or a clinical laboratory licensed and approved by the Department of Health and specifically designated for this purpose. This section shall be applicable to all injured occupants who were capable of motor vehicle operation if the operator or person in actual physical control of the movement of the motor vehicle cannot be determined. Test results shall be released upon request of the person tested, his attorney, his physician or governmental officials or agencies.

the Commonwealth to, if they have probable cause, to have a legal blood drawn. . . . That was the section that I was using for Officer Farren to have legal blood drawn.

N.T., 12/21/15, at 84. Lieutenant Lutz acknowledged that he could have requested a warrant:

Q: Now, prior to you requesting I believe it was Officer Farren to seek a legal blood draw from York Hospital, you did not request him to obtain a search warrant before doing so?

[Lieutenant Lutz]: That's correct.

Q: You could have?

A: If it was needed.

Q: You could have?

A: Yes, I could have.

*Id.* at 83. Sergeant Farren's testimony made no mention of Section 3755. Instead, as mentioned *supra*, he sought to obtain Appellee's blood by reading him an implied consent form. In fact, the paperwork he completed to request that the hospital transfer the previously drawn blood sample to NMS also made no mention of 3755, but rather stated underneath his signature: "I am requesting this test in accordance with 75 Pa.S.C.A. 1547."[4] Commonwealth's Exhibit 18. Sergeant Farren also testified that he could have obtained a warrant:

Q: It was possible to obtain a search warrant though before you went to York Hospital?

[Sergeant Farren]: It could be, yes.

*Id.* at 66.

---

[4] Section 1547 is commonly referred to as Pennsylvania's implied consent law. As discussed *infra*, Section 1547 and Section 3755 are interrelated, but distinct statutes.

Following the hearing, the court requested briefing on the issues from both parties. Appellee argued that Officer Farren's seizure of his blood sample was illegal and unsupported by the exigency exception or Section 3755. With respect to exigency, he directed the court's attention to *Missouri v. McNeely*, 569 U.S. 141 (2013), which held that there is no *per se* rule that alcohol dissipation in the blood stream creates exigent circumstances. *McNeely* also emphasized that the Fourth Amendment requires police to obtain a warrant where it can be done so reasonably without significantly undermining the efficacy of the search. With respect to Section 3755, Appellee argued that the statute alone could not overcome the warrant requirement and protections of the Fourth Amendment; but, to the extent the statute was valid, Appellee argued that Section 3755 was not satisfied here because there was not probable cause to believe he violated the motor vehicle code at the time hospital personnel took his blood. In response, the Commonwealth argued that *McNeely* did not cast doubt on the constitutionality of Section 3755, as *McNeely* dealt exclusively with exigent circumstances. The Commonwealth's briefing did not assert that exigent circumstances justified this blood draw, but instead argued that the statutory implied consent scheme was valid and therefore the blood draw was permissible under Section 3755:

> All binding precedent preserves our implied consent scheme under Sections 1547 and 3755 as an exception to the warrant requirement. *McNeely* offers nothing to disturb this case law, as that case solely involved the exigent circumstances exception. Blood from a defendant obtained pursuant to probable cause under § 3755 is constitutionally valid as an exception to the warrant requirement of the Fourth Amendment and Article I, Section 8. The police here did legally obtain [Appellee's] blood pursuant to § 3755. Accordingly, [Appellee's] motion to suppress evidence obtained from his blood draw at York Hospital should be denied.

Commonwealth's Memorandum, 1/29/16, at 27.

On April 27, 2016, the trial court denied Appellee's motion to suppress. The court reasoned that the blood test results were admissible under the exigent circumstances exception based on the totality of the circumstances, regardless of Section 3755 or implied consent:

> The exigency Officer Lutz felt is evident from his testimony when he stated, "I instructed Officer Farren, who was reporting on duty, that *as soon as he came on duty* to *jump* in his car and respond to the York Hospital and request a legal blood [draw], a BAC, for Mr. Akim." (N.T. 4.29.15, at 47) (emphasis added). Though Officer Lutz's subjective feeling of exigency carries no weight, we agree that the circumstances warranted it.
>
> Metabolization of alcohol is not, in and of itself, enough to find exigency; however, we believe that investigators' fears vis-à-vis metabolization are enough to find exigency when the officers were delayed by needs more pressing tha[n] obtaining [Appellee's] BAC—namely, attending to victims and processing the scene of a death. In short, to whatever extent *McNeely* calls our implied consent scheme into question, **under the totality of the circumstances *sub judice*, this is a case of exigency that is sufficient to overcome any warrant requirement not dispensed with through our implied consent laws.**

Trial Ct. Order, 4/27/16, at 10 (emphasis added).

Appellee was thereafter tried by a jury between January 9 through January 13, 2017, during which the Commonwealth introduced his blood test results. The jury found him guilty of various DUI offenses, homicide by vehicle, EWOC, REAP, aggravated assault while DUI, aggravated assault by vehicle, and careless driving. The trial court subsequently sentenced him to four to eight years of imprisonment followed by one year of probation. After Appellee's post-sentence motion challenging the weight of the evidence and his sentence was denied, he appealed to the Superior Court.

In his appeal to the Superior Court, Appellee argued that the trial court erred in denying his motion to suppress for three reasons: 1) because the Commonwealth failed to comply with 75 Pa.C.S. § 3755(a) of the Motor Vehicle Code; 2) even if the Commonwealth did comply with that statute, statutory compliance alone is insufficient to

overcome the warrant requirement; and 3) there were no exigent circumstances here to justify a warrantless search.

Notably, in its Rule 1925(a) opinion, the trial court determined that its original finding of exigency was incorrect.

> The trial court based its denial of suppression of the blood test results upon a finding of exigent circumstances. Upon further review, the trial court believes it erred in finding exigent circumstances. While the Newberry Township Police Department was pre-occupied with the hectic nature of a train wreck, Sgt. Farren arrived at York Hospital to request a blood test. When he arrived, York Hospital had already conducted a test. All Sgt. Farren did was [ ] follow the procedure under §3755 and instruct the hospital staff to transfer the blood samples to NMS labs in Willow Grove.
>
> When the trial court denied suppression, it incorrectly viewed the totality of the circumstances and gave too much weight to the pre-occupied police force. The trial court now believes that there was no urgent and compelling reason for Sgt. Farren to not leave the hospital and attempt to secure a warrant before returning to have the blood samples transferred to NMS labs. Because of this, exigent circumstances did not exist[.]

Trial Ct. Rule 1925(a) Op., 4/13/18, at 12-13. The trial court noted that the constitutionality of Section 3755 was uncertain but asked the Superior Court to find it unconstitutional and suppress Appellee's blood test results. *Id.* at 13, 32.

In a published decision, a panel of the Superior Court unanimously agreed with the trial court's Rule 1925(a) opinion that there were no exigent circumstances because the blood evidence was preserved and no longer dissipating at the time it was seized. *Commonwealth v. Jones-Williams*, 237 A.3d 528, 544, 546 (Pa. Super. 2020). Important to its holding was a recognition that the seizure occurred when Sergeant Farren intervened, not when hospital personnel drew the blood. *Id* at n. 18 ("Sergeant Farren's request to test [Appellee's] blood sample constitutes the relevant search for purposes of our constitutional analysis."). The panel also held that although the Commonwealth complied with Section 3755(a) of the Vehicle Code, statutory compliance no longer independently dispenses with the need to obtain a warrant in light of this Court's decision

in *Commonwealth v. Myers*, 164 A.3d 1162 (Pa. 2017). *Id.* at 543. Therefore, the Superior Court concluded that the trial court should have granted Appellee's motion to suppress, reasoning that the drawn blood was seized without a warrant and absent an exception to the warrant requirement. As such, the court vacated Appellee's judgment of sentence and remanded for a new trial. *Id.* at 546.

The Commonwealth filed a petition for allowance of appeal with this Court, which we granted to address the following issues:

a. Whether the Superior Court issued a decision in conflict with and failed to properly apply and follow the binding legal precedent of the United States Supreme Court and this Court, in holding that 75 Pa.C.S. § 3755 does not independently support implied consent on the part of [a] driver suspected or arrested for DUI, rendering the implied-consent statute unconstitutional?

b. Whether the Superior Court issued a decision in conflict with and failed to properly apply and follow the binding legal precedent of the United States Supreme Court in *Mitchell v. Wisconsin*, ___ U.S. ___, 139 S.Ct. 2525 (2019), by finding that exigent circumstances did not exist to support a warrantless request to test [Appellee's] blood?

*Commonwealth v. Jones-Williams*, 252 A.3d 1087, (Table) (Pa. 2021) (per curiam).

## II. Analysis

### A. Standard/Scope of Review

Our standard of review of a suppression motion is well-settled, it "is limited to determining whether the suppression court's factual findings are supported from the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Shaffer*, 209 A.3d 957, 968-69 (Pa. 2019). Our review of questions of law is *de novo*. *Id.* The scope of review for the denial of a motion to suppress "is to consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the suppression record as a whole." *Id.*

It is well-settled that the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution prohibit unreasonable searches and seizures. *Int. of T.W.*, 261 A.3d 409, 416 (Pa. 2021). The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, paper, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularity describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. Similarly, Article I, Section 8 of the Pennsylvania Constitution provides:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizure, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

PA. CONST. art. I, § 8.

A search or seizure conducted without a warrant "is presumptively unreasonable . . . subject to a few specifically established, well-delineated exceptions." *Commonwealth v. Chase*, 960 A.2d 108, 113 (Pa. 2008). As a preliminary matter, the Superior Court correctly recognized that "[t]he blood draw by hospital personnel did not trigger protections under either the Fourth Amendment or Article I, Section 8 because there is no evidence that hospital personnel acted at the direction of the police or as an agent of the police." *Jones-Williams*, 237 A.3d at n. 18. Instead, it was Sergeant Farren's request to transfer Appellee's blood sample to NMS that constitutes the relevant seizure for purposes of our constitutional analysis. *See generally*, *Commonwealth v. Shaw*, 770 A.2d 295, 299 (Pa. 2001) (recognizing a privacy right associated with patients' medical records). With that in mind, we turn to the questions presented here, which ask us to review two asserted warrant exceptions, implied consent and exigent circumstances, and whether they justified the warrantless seizure of Appellee's blood.

## B. Exigency

The trial court denied Appellee's suppression motion in the first instance based on the exigency exception to the warrant requirement, so we begin our discussion with the applicability of that exception. Due to the nature of the question presented, both parties focus heavily on *Mitchell v. Wisconsin*, 139 S.Ct. 2525 (2019), which is the most recent case from the United States Supreme Court to assess the exigency exception with respect to a DUI blood draw. This Court previously summarized that "the holding of *Mitchell* . . . is that where a driver is unconscious and therefore cannot be given a breath test, the exigent-circumstances rule almost always permits a blood test without a warrant." *Commonwealth v. Trahey*, 228 A.3d 520, 534, n.11 (Pa. 2020) (quoting *Mitchell*, 139 S.Ct. at 2531) (internal quotation marks omitted). More specifically, *Mitchell* held that "exigency exists when (1) BAC evidence is dissipating and (2) some other factor creates pressing health, safety, or law enforcement needs that would take priority over a warrant application. Both conditions are met when a drunk-driving suspect is unconscious. . . ." *Mitchell*, 139 S.Ct. at 2357. The Commonwealth notes that the Supreme Court also allowed an exception to its rule in *Mitchell* for an "unusual case" where a defendant is able to show that "his blood would not have been drawn if police had not been seeking BAC information, and that police could not have reasonably judged that a warrant application would interfere with other pressing needs or duties." *Id.* at 2359.

The Commonwealth argues that applying *Mitchell* to this case, exigency was established because there was probable cause to believe that Appellee operated his vehicle under the influence of marijuana, he needed to be transported to the hospital for treatment, was only intermittently conscious, and due to his mental state, was unable to communicate with Sergeant Farren at the hospital. According to the Commonwealth, "[f]ollowing *Mitchell*, police request for a warrantless blood test from the injured and

uncommunicative [Appellee] while he was being treated for his injuries was constitutional under the exigent circumstances exception." Appellant's Brief, at 37. The Commonwealth also argues that this is not the type of "unusual case" referred to in *Mitchell*, where the exigency exception would not apply. Namely, Appellee cannot establish that his blood would not have been drawn if police had not been seeking intoxicant information because the blood was drawn prior to any police intervention. Also, the Commonwealth suggests that police could not have reasonably applied for a search warrant at the time of the blood test request without interfering with their other duties surrounding the crash and resulting emergencies.

According to the Commonwealth, the Superior Court erred in concluding that any exigency ended once Appellee's blood was drawn and therefore preserved. The Commonwealth argues that *Mitchell* contemplated the instant scenario and would allow a warrantless test of blood already drawn by hospital personnel, so long as the other *Mitchell* factors were present. In *Mitchell*, the Supreme Court explained that the unconsciousness of a DUI suspect is itself a medical emergency for which that suspect will need to go to a hospital "not just for the blood test itself but for urgent medical care." *Mitchell*, 139 S.Ct. 2537-38. In such circumstances:

> Police can reasonably anticipate that such a driver might require monitoring, positioning, and support on the way to the hospital; **that his blood may be drawn anyway, for diagnostic purposes, immediately on arrival**; and that immediate medical treatment could delay (or otherwise distort the results of) a blood draw conducted later, upon receipt of a warrant, thus reducing evidentiary value.

*Id.* (emphasis added). The Supreme Court also noted that "unconscious suspects will often have their skin pierced and blood drawn for diagnostic purposes," and so a warrantless blood test "could lessen the [bodily] intrusion" by preventing a second blood draw. *Id.* n.8. The Commonwealth claims that the Superior Court's opinion conflicts with these principles of *Mitchell* and we should therefore reverse its decision. Thus, the

Commonwealth concludes that, "[p]ursuant to *Mitchell*, police possessed the required probable cause and exigent circumstances to have a warrantless blood test be performed on the blood from an unconscious or stuporous [Appellee] that was drawn by hospital personnel while undergoing medical treatment." Appellant's Brief, at 40.

Appellee also focuses on *Mitchell* but emphasizes that *Mitchell* did not establish a *per se* exigency exception for all blood draws. Instead, Appellee explains that the exigent circumstances exception is limited, and it only permits a warrantless search when "there is compelling need for official action and no time to secure a warrant." *Mitchell,* at 2534 (quoting *Missouri v. McNeely*, 569 U.S. 141, 149 (2013)). Appellee argues that there were no such exigent circumstances here preventing police from obtaining a warrant, as they testified at the suppression hearing that they could have secured a warrant. N.T., 12/21/15, at 66, 83. According to Appellee, the lack of exigency is obvious because the seizure occurred after the blood was drawn, but the relevant testing did not occur until over three days later. Therefore, Appellee requests we affirm the Superior Court's decision, which determined that "[a]s of [the time the blood was drawn], then, [Appellee's] blood sample, including all of the intoxicant contained therein, was preserved. Thus, the extraction . . . literally stopped the clock on any concern that the further passage of time could result in dissipation of evidence[.]" *Commonwealth v. Jones-Williams*, 237 A.3d 528, 544, 544 (Pa. Super. 2020).

It is helpful at the outset to review the foundational principles of the exigency exception. It cannot be overlooked that "the ultimate touchstone of the Fourth Amendment is reasonableness." *Riley v. California*, 134 S.Ct. 2473, 2482 (2014) (quotations omitted). The very reason the exigency exception exists is to allow prompt action by law enforcement when the totality of the circumstances establish that it was reasonable to act without a warrant. Thus, the exigency exception applies "when the

exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Missouri v. McNeely*, 133 S.Ct. 1552, 1558 (2013) (quoting *Kentucky v. King*, 131 S.Ct. 1859 (2011)).

Although exigency arises in various circumstances, relevant to the issue today is exigent circumstances based upon "a likelihood that evidence will be destroyed if police take the time to obtain a warrant[.]" *Commonwealth v. Wright*, 961 A.2d 119, 138 (Pa. 2008). For example, in *Wright*, this Court held that exigent circumstances justified the seizure of Wright's bloody clothes and swabs of blood from his hands without a warrant. Given the nature of the evidence and the fact that Wright had been taken to the hospital, this Court affirmed the trial court's holding that the time required to obtain a warrant would have certainly risked destruction of the evidence on Wright's hands and clothing:

> It is hard to imagine evidence more readily destroyed than blood on a person's hands. Further, in a hospital situation it is similarly hard to imagine a hospital admission which would have not removed [Wright's] clothes and subjected them to … storing, laundering, relatives taking, etc. . . . The one to two hours necessary to obtain a warrant would have risked all of this.

*Id* (cleaned up).

With those basic principles in mind, it is clear exigent circumstances did not exist to justify the warrantless seizure of Appellee's blood. Exigency in the context of blood draws has become a recurring issue for our courts. This is unsurprising for the simple fact that such evidence inherently is steadily destroyed through the body's metabolic processes. In turn, an extensive body of case law has developed regarding this issue. *Schmerber v California*, 384 U.S. 757, 770 (1966) (warrantless blood draw was constitutional because the officer "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened the destruction of evidence."); *Missouri v. McNeely*, 569 U.S. 141 (2013) (following *Schmerber*, the metabolization of drugs or alcohol in the blood

stream does not *per se* establish exigency, but must be considered among other factors on a case by case basis under the totality of the circumstances); *Birchfield v. North Dakota*, 136 S.Ct. 2160, 2185 (2016) (assessing the constitutionality of breath and blood tests as well as implied consent statutes); *Mitchell, supra* (holding that exigent circumstances will almost always support a warrantless blood draw in the context of an unconscious DUI suspect, and noting that a less intrusive breath test is not available under the circumstances); *Commonwealth v. Trahey*, 228 A.3d 520 (Pa. 2020) (applying *Mitchell* and *Birchfield* to hold that there were no exigent circumstances for a warrantless seizure of blood where a breath test could have been taken to test for the presence of alcohol and there was time to secure a warrant to test blood for controlled substances).

However, this case does not present the same inherent exigency concerns as other blood draw cases because the evidence in this case was no longer being actively metabolized. Indeed, as recognized in *Mitchell*, the first factor necessary to establish exigency is that the evidence within the blood was dissipating. *Mitchell*, 139 S.Ct. at 2537. Starkly different here, the seizure did not occur until Sergeant Farren filled out paperwork requesting the blood to be tested. At the time of that seizure, the blood was already drawn, preserved, and the evidence therein no longer dissipating. Therefore, in the absence of any other evidence that the drawn and preserved blood would be lost or destroyed within the time it would take to obtain a warrant, there were no exigent circumstances to justify the warrantless seizure. No such alternative theory of exigency exists here, as both Sergeant Farren and Lieutenant Lutz conceded that they could have

obtained a warrant.[5]  Therefore, we agree with the Superior Court that the trial court erred in denying Appellee's suppression motion based on exigent circumstances.[6]

## C. Implied Consent/§ 3755

Having concluded that the exigency exception does not support the warrantless seizure of Appellee's blood, the only remaining issue is the Commonwealth's contention that the Superior Court erred in deeming Section 3755 unconstitutional.  In reaching that conclusion, the Superior Court conducted a two-part analysis.  First, it assessed whether the Commonwealth complied with Section 3755.  Then, after concluding that the Commonwealth proved adherence with the requirements of Section 3755, the Superior Court held that compliance with the statute does not satisfy the warrant requirement under this Court's decision in *Commonwealth v. Myers*, 164 A.3d 1162 (Pa. 2017).  The

---

[5] The officers' testimony is not dispositive of the issue, as any Fourth Amendment inquiry requires an objective assessment of the evidence. *Commonwealth v. Trahey*, 228 A.3d, at 539; *McNeely*, 133 S.Ct. at 1558.  However, the record undeniably supports the officers' judgment that they could have obtained a warrant, particularly the fact that nearly two hours lapsed after the blood was drawn before Sergeant Farren requested for the blood to be tested, and the actual test did not occur until over a week later.

[6] Justice Wecht's Concurring and Dissenting Opinion ("CDO") analyzes this issue beyond the simple fact that the blood was preserved and suggests that the exigency exception was also unavailing because the intoxicant at issue was marijuana.  According to the CDO, "where the sole basis for probable cause is evidence demonstrating that the suspect drove under the influence of *marijuana*, as it was here, I seriously doubt that law enforcement will be unable to obtain a search warrant for a blood test before the pertinent evidence dissipates from the suspect's blood."  CDO at 8.  To support this position, the CDO notes that THC's inactive metabolite can take days or weeks to dissipate from one's body.  It is worth reiterating that the suppression of evidence must be assessed on a case-by-case basis under the totality of the circumstances.  While it may be more difficult to establish exigency for a blood draw where the suspicion is driving under the influence of marijuana rather than alcohol, that alone does not foreclose the possibility.  In fact, *Mitchell* suggested such a scenario: where a suspect's pressing medical treatment or some other imminent intervening factor could alter the evidence contained within his or her blood.  In such a situation, exigency may exist notwithstanding the slower metabolization of controlled substances.

Commonwealth argues the latter analysis was error because the portion of *Myers* upon which the Superior Court relied was a non-precedential plurality.

Putting aside whether the Superior Court's application of the *Myers* plurality was appropriate, the Superior Court could only reach that constitutional assessment having first concluded that the Commonwealth complied with Section 3755. *See Commonwealth v. Ludwig*, 874 A.2d 623, 634 n 9 (Pa. 2005) (declining to assess whether a statute was unconstitutional as applied because the Commonwealth failed to establish a preliminary *prima facie* case under the statute); *Barasch v. Bell Telephone Co. of Pennsylvania*, 605 A.2d 1198, 1203 (Pa. 1992) ("[W]e have long held that our courts should not decide constitutional issues in cases which can properly be decided on non-constitutional grounds."). Section 3755 is titled "Reports by emergency room personnel" and reads:

> **(a) General rule.**--If, as a result of a motor vehicle accident, the person who drove, operated or was in actual physical control of the movement of any involved motor vehicle requires medical treatment in an emergency room of a hospital and if probable cause exists to believe a violation of section 3802 (relating to driving under influence of alcohol or controlled substance) was involved, the emergency room physician or his designee shall promptly take blood samples from those persons and transmit them within 24 hours for testing to the Department of Health or a clinical laboratory licensed and approved by the Department of Health and specifically designated for this purpose. This section shall be applicable to all injured occupants who were capable of motor vehicle operation if the operator or person in actual physical control of the movement of the motor vehicle cannot be determined. Test results shall be released upon request of the person tested, his attorney, his physician or governmental officials or agencies.

75 Pa.C.S. § 3755. According to the Superior Court, "the officers had probable cause to believe that [Appellee] was DUI when they asked the hospital to conduct chemical testing. . . . this is sufficient to show that the Commonwealth complied with the requirements of Section 3755(a)." *Commonwealth v. Jones-Williams*, 237 A.3d 528, 537 (Pa. Super. 2020).

However, Sergeant Farren's testimony made no mention of Section 3755. Instead, the record reflects that Sergeant Farren went to the hospital with the intention of seeking Appellee's consent. The paperwork Sergeant Farren filled out to request that the hospital transfer the blood sample to NMS specifically stated underneath his signature: "I am requesting this test in accordance with 75 Pa.S.C.A. 1547." Commonwealth's Exhibit 18.[7] Although Lieutenant Lutz testified that he believed Sergeant Farren could obtain the blood under Section 3755, that subjective assessment alone does not establish compliance with the statute. *See, Trahey*, *supra* n.5. Most importantly, an objective analysis of the evidence reveals that the record is silent as to why the hospital drew Appellee's blood prior to Sergeant Farren's arrival. In the absence of any facts that the blood was taken pursuant to Section 3755, it cannot be said that the Commonwealth proved adherence with the requirements of the statute. *See Shaw*, 770 A.2d, at 298 (finding, consistent with Justice Zappala's concurring opinion in *Riedel*, Section 3755 inapplicable because hospital personnel drew and tested blood for independent medical purposes and therefore it was "not a case where a blood sample has been taken pursuant to Section 3755."); *Commonwealth v. Riedel*, 651 A.2d 135, 142-43 (Pa. 1994) (Zappala, J., Concurring) (explaining Section 3755 and concluding that the statutory procedure was not satisfied where "the trooper testified that he went to the hospital with the intention of requesting [Riedel] submit to a blood test, but did not do so when he learned that samples had been taken for medical purposes.").

---

[7] This Court has recognized that "Section 3755 and the implied consent law, 75 Pa.C.S. § 1547, comprise a statutory scheme[.]" *Commonwealth v. Shaw*, 770 A.2d 295, 298 (Pa. 2001). However, while Section 1547 "implies the consent of a driver to undergo blood testing in certain circumstances," Section 3755 "requires hospital personnel to release the blood test results at the request of, among others, a police officer." *Id.* This Court noted in *Myers* that the authority of these statutes are not interchangeable: "[T]he blood test in *Riedel* was not effectuated pursuant to Section 1547 . . . The police officer requested the results of that test under the authority of a different statute[, Section 3755]." *Myers*, 164 A.3d at 670 n. 14.

Because the record does not establish that Section 3755 applied under these circumstances, the subsequent analysis of the statute's constitutionality should not be addressed. Moreover, the trial court only provided a *post hoc* assessment of Section 3755 in its Rule 1925(a) opinion, long after the suppression motion had been denied based upon its finding of exigent circumstances. Trial Ct. Order, 4/27/16, *supra*. Thus, because that basis was legally incorrect, the Superior Court could have reversed the denial of suppression for that reason alone without its further assessment of Section 3755. *Barasch*, *supra*; *Ludwig*, *supra* (citing *Shuman v. Bernie's Drug Concessions*, 187 A.2d 660, 664 (1963) (constitutional questions should not be passed upon unless absolutely necessary to resolve the controversy)).[8]

### III. Conclusion

Accordingly, while we affirm the Superior Court's ultimate disposition reversing the trial court's order denying suppression, vacating Appellee's judgment of sentence, and remanding for a new trial; we vacate the portion of the Superior Court's holding deeming Section 3755 unconstitutional.

Chief Justice Baer and Justices Todd and Brobson join the opinion.

Justice Wecht files a concurring and dissenting opinion in which Justices Donohue and Dougherty join.

---

[8] These long-standing appellate standards emphasize that it was inappropriate for the Superior Court to assess the statute's constitutionality where it was not absolutely necessary to do so. Notwithstanding the parties' arguments or the Rule 1925(a) opinion, the trial court denied suppression based on its initial determination of exigent circumstances. That ruling shaped the scope of appellate review. We cannot say that "the constitutionality of these procedures is squarely before us" (CDO at 23) when the denial of the underlying suppression order was not based on those very procedures.